FILED
2014 May-28  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **MELANIE PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:12-cv-1985-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Melanie Phillips ("Phillips") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will affirm the decision denying benefits.

### I.  Procedural History

Phillips filed an application for Title II disability insurance benefits on April 23, 2008, and an application for Title XVI Supplemental Security Income on September, 30, 2008, alleging in both applications a disability onset date of March

1, 2007, due to rheumatoid arthritis, fibromyalgia, carpal tunnel syndrome, depression/anxiety, chronic fatigue, irritable bowel syndrome, insomnia, and chronic back pain. (R. 21, 105). After the SSA denied Phillips' claim, she requested a hearing before an ALJ. (R. 66). The ALJ subsequently denied Phillips' claim, (R.21-32), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-4). Phillips then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a

2

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

3

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Phillips met the insured status requirements of the Act through December 31, 2012. (R. 21).  Moving to the first step, the ALJ found that Phillips had engaged in substantial gainful activity during the fourth quarter of 2007, but met Step One during other relevant periods.  (R. 23).  Next, the ALJ found that Phillips satisfied Step Two because she suffered from the severe impairments of "mild osteoarthritis,

fibromyalgia, dysthymic disorder, and polysubstance abuse." (R. 24). The ALJ

then proceeded to the next step and found that Phillips failed to satisfy Step Three

because she did "not have an impairment or combination of impairments that meets

or medically equals one of the listed impairments." *Id.* Although the ALJ

answered Step Three in the negative, consistent with the law, *see McDaniel*, 800

F.2d at 1030, the ALJ proceeded to Step Four where she determined Phillips

> has the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb
> ladders, ropes or scaffolds. She has no manipulative limitations. The
> claimant should avoid concentrated exposure to extreme
> temperatures, wetness and humidity, and she should avoid all
> exposure to hazardous machinery and heights. The claimant can
> perform unskilled work with short, simple instructions. She can work
> in coordination with or proximity to others without being distracted
> by them. She can sustain an ordinary routine without special
> supervision.

(R. 26). At the time of the ALJ's decision Phillips was 39 years old, (R. 31), and

had past relevant work that included medium unskilled work as a maid and dining

room attendant. (R. 31). In light of Phillips' RFC, the ALJ held that Phillips "is

unable to perform any past relevant work." (R. 30). Lastly, in Step Five, the ALJ

considered Phillips' age, education, work experience, and RFC and determined

"there are jobs that exist in significant numbers in the national economy [Phillips]

can perform." (R. 31). Therefore, the ALJ found that Phillips "has not been under

a disability, as defined in the Social Security Act, from March 1, 2007, through the

date of this decision." *Id.*

5

# V.  Analysis

The court now turns to Phillips' contentions that the ALJ (1) erred in failing to properly evaluate the opinion of her treating physician; (2) erred in failing to obtain testimony from a vocational expert; and (3) evidenced bias against her in finding she had polysubstance abuse as a severe impairment.  *See* doc. 9 at 6-10. The court addresses each contention in turn.

A.    <u>The ALJ properly rejected the Medical Source Statement from Phillips' treating physician.</u>

Phillips argues the ALJ improperly rejected a Medical Source Statement (MSS) dated June 11, 2009, from Dr. J. A. Tomlinson, which indicated that Phillips had physical limitations exceeding those found by the ALJ in his RFC assessment. (R. 227-30).  In evaluating Phillips' contention, the court notes that in determining how much weight to give to each medical opinion, the ALJ must consider several factors, including (1) whether the doctor has examined the claimant; (2) whether the doctor has a treating relationship with the claimant; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5) whether the doctor is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c).  Under the Commissioner's regulations, a treating physician's opinion will receive controlling weight if it is well supported and not inconsistent with other substantial evidence in the record:

> If we find that a treating source's opinion on the issue(s) of the nature
> and severity of your impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence in your case record,
> we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).  In this circuit, "the testimony of a treating physician

must be given substantial or considerable weight unless 'good cause' is shown to

the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good

cause" exists when the evidence does not bolster the treating physician's opinion; a

contrary finding is supported by the evidence; or the opinion is conclusory or

inconsistent with the treating physician's own medical records.  *Id*.  If a treating

physician's opinion is rejected, "[t]he ALJ must clearly articulate the reasons for

giving less weight to the opinion of a treating physician, and the failure to do so is

reversible error."  *Id.*

    In considering the MSS from Dr. Tomlinson, the ALJ observed that the

signature of the person completing the form is not legible.  (R. 28).  More

significantly, the ALJ noted that Phillips testified at the hearing that she and Dr.

Tomlinson's nurse completed the form.  *Id.*  Consequently, "[b]ecause Dr.

Tomlinson did not complete the form and the assessments in the form are only the

claimant's subjective limitations," the ALJ did "not consider[] the restrictions

assessed in [the MSS] as being a valid Medical Source Statement."  *Id.*  The court

finds no error here because the regulations provide that "[m]edical opinions are

statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a).  Because the ALJ reasonably found the MSS did not reflect Dr. Tomlinson's opinions, but rather those of Phillips and Dr. Tomlinson's nurse, she committed no error in failing to give it weight as a medical source opinion.

The court is not persuaded by Phillips second contention that the ALJ should have recontacted Dr. Tomlinson for clarification if the ALJ had doubts about the validity of the MSS.  Doc. 9 at 7.  The relevant regulation in effect at the time[1] provided in pertinent part that:

> When the evidence we receive from your treating physician or psychologist or other medical source is *inadequate for us to determine whether you are disabled,* we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.

---

[1] New regulations regarding  recontacting of medical sources went into effect on March 26, 2012.  77 Fed. Reg. 10651-01 (February 23, 2012).  Under the new regulations, recontacting a medical source is within the discretion of the ALJ.  *See* 20 C.F.R. § 404.1520b(c)(1) ("We *may* recontact your treating physician . . . .") (emphasis added).

20 C.F.R. §§ 404.1512(e)(2010)(emphasis added).  Under the regulation, the ALJ

only had a duty to contact Dr. Tomlin if there was insufficient medical evidence to

allow the ALJ to determine whether Phillips was disabled.  Here, the ALJ  relied

upon evidence that included a consultative examination by Dr. Boyde Harrison,

who opined that Phillips "could perform work related activities which would be

beneficial to her."  (R. 274).  Consequently, because sufficient medical evidence

from other treating and examining sources existed to allow the ALJ to make an

informed disability determination, the ALJ had no obligation to recontact Dr.

Tomlinson.

Moreover, before remanding for further development of the record, a

reviewing court must consider "whether the record reveals evidentiary gaps which

result in unfairness or 'clear prejudice.'"  *Smith v. Schweiker*, 677 F.2d 826, 830

(11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A

July 1981).  Therefore, "although the ALJ has a duty to develop a full and fair

record, there must be a showing of prejudice before [a reviewing court] will remand

for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995

(11th Cir. 2010) (unpublished) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir.

1995).  Phillips has pointed to no evidentiary gaps that cause unfairness or

prejudice.  Although Phillips was unrepresented at the ALJ hearing, she was

represented by an attorney before the Appeals Council and is currently represented

before this court.  Significantly, Phillips has submitted no statement or updated

MSS from Dr. Tomlinson to show that the MSS actually represented his medical

opinions.  Because Phillips has not established the requisite prejudice necessary,

remand for development of the record is not required.

      B.    <u>The ALJ did not err in failing to obtain testimony from a vocational expert.</u>

Next, taking issue with the ALJ's reliance on Medical-Vocational Rule

202.21,[2] (R. 31), Phillips argues the ALJ should have elicited testimony from a

vocational expert (VE) because the ALJ's RFC assessment included nonexertional

limitations.  Doc. 9 at 8-9.  These nonexertional limitations restricted Phillips from

climbing ladders, ropes or scaffolds; required her to avoid concentrated exposure to

extreme temperatures, wetness and humidity, and all exposure to hazardous

machinery and heights; and provided that she could perform unskilled work with

short, simple instructions.  (R. 26).  However, the presence of nonexertional

limitations cause the grids to be inapplicable only when they "are severe enough to

prevent a wide range of gainful employment at the designated level."  *Sryock v.*

_____

    [2]  The Medical-Vocational Guidelines, ("grids") found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform past relevant work.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).  Medical-Vocational Rule 202.21 dictates a finding of "not disabled" for an individual of Phillips' age, educational background, and previous work experience who can perform light work.

*Heckler*, 764 F.2d 834, 836 (11th Cir. 1985) (quoting *Murray v. Heckler*, 737 F.2d 934, 935 (11th Cir. 1984).  For this reason, the ALJ "should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level," which will be reviewed "only to determine whether it is supported by substantial evidence."  *Id.*

Here, the ALJ found Phillips' additional nonexertional limitations "have little or no effect on the occupational base of unskilled light work."  (R. 31).  Support for this finding is found in Social Security Ruling (SSR) 83-14, which provides that "relatively few jobs in the national economy require ascending or descending ladders and scaffolding," and that at the light level of exertion, "the inability to ascend or descend scaffolding, poles, and ropes" would "have very little or no effect on the unskilled light occupational base."  1983 WL 31254, at *2, *5 (S.S.A.).  The ruling also explains that functional ability is not necessarily impaired by environmental restrictions, such as avoiding hazardous machinery or unprotected heights.  *Id.* at *2.  Similarly, Phillips' need to avoid extreme temperatures, wetness, and humidity, does not necessarily preclude a wide range of light work.  *See id.* at *5 ("Environmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base.").  For these reasons, the court finds the ALJ's determination that Phillips' nonexertional limitations had "little or no effect on the occupational

base of unskilled light work" is supported by substantial evidence.  Consequently, the ALJ did not err in failing to elicit testimony from a VE.

C.    The ALJ's consideration of Phillips' drug use does not constitute bias.

Phillips contends the ALJ was biased because she found Phillips had the severe impairment of polysubstance abuse even though the record "was devoid of any evidence of such abuse."  Doc. 9 at 9.  Phillips further asserts that the ALJ's "choice to dwell on this unsubstantiated history of substance abuse is highly prejudicial and it appears obvious that it influenced the ALJ's opinion of [Phillips'] credibility as well as the merits of the case."  *Id.* at 9-10.

The court initially notes that a presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies.  *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (finding that hearing officers who decide Part B Medicare claims "serve in a quasi-judicial capacity, similar in many respects to that of administrative law judges," and are presumed to be unbiased).  However, this presumption may be rebutted by showing a conflict of interest or some other specific reason for disqualification.  *Id.*  Under the regulations, an ALJ is disqualified from conducting a hearing "if he or she is prejudiced or partial with respect to any party."  20 C.F.R. § 404.940.  Thus, Phillips may overcome the presumption by showing that the ALJ was prejudiced against her.

12

Prejudice exists when an ALJ considers evidence outside the record in deciding a claimant's case.  In *Miles v. Chater,* the court found that an ALJ's observation that a particular doctor's examinations performed for the claimant's attorney "invariably conclude that the person being examined is totally disabled" was not supported by evidence in the record and that the claimant was "entitled to an unbiased reconsideration of her application for benefits before a different ALJ." 84 F.3d 1397, 1401 (11th Cir. 1996).  However, to constitute bias, the evidence "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also U.S. v. Amedeo* 487 F.3d 823, 828 (11th Cir. 2007) (same).  Consequently, "[o]pinions formed on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Amedeo,* 487 F.3d at 829 (same).  When the alleged bias does not stem from an extrajudicial source, it must be "so extreme as to display clear inability to render fair judgment." *Liteky,* 510 U.S. at 551.

Here, Phillips has not demonstrated that the ALJ reached a decision based on facts other than those learned from her participation in Phillips' case. *See Grinnell*,

13

384 U.S. at 583.  In fact, contrary to Phillips' contention that the medical evidence

of record was "devoid of any evidence of such abuse," the ALJ relied on the report

of Dr. Boyde Harrison, the SSA's consultative examiner, (R. 29), who commented

that Phillips did not initially mention that she was taking narcotics, but that the

prescription drug database for the State of Alabama showed she had taken "up to

240 10mg Methadones in a month."  (R. 274).  Consequently, Dr. Harrison opined

that "part of [Phillips'] problem is Opiate dependen[ce]."  (R. 274).  The ALJ also

noted Phillips reported on a Drug and Alcohol Questionnaire in October 2008 that

she "never used drugs unless prescribed to me" (R. 27, 160), but that she was

"charged with possession of controlled substances and drug paraphernalia on

March 18, 2008, . . . pled guilty and was sentenced to 24 months confinement, but

the sentence was suspended."  (R. 27, 48-49).  Phillips admitted this was true.  (R.

49).  Put simply, the ALJ learned of Phillips' drug use from her participation in

Phillip's case rather than from an "extrajudicial source."

Moreover, Phillips has not shown the ALJ displayed "such a high degree of

favoritism or antagonism as to make fair judgment impossible."  *Liteky*, 510 U.S. at

555.  The ALJ's discussion of Phillips' drug use is not sufficient to show such bias

because "judicial remarks during the course of a trial that are critical or

disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do

not support a bias or partiality challenge."  *Id.* at 555.  Moreover, even "expressions

14

of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not establish bias or partiality.  *Id.*  at 555-56.

Here, the ALJ considered Phillips' inconsistent statements about drug use as part of her consideration of Phillips' credibility. (R. 27).  This is in accordance with the regulations, which provide that the ALJ will consider inconsistencies or conflicts between a claimant's subjective allegations and other evidence in evaluating credibility.  *See* 20 C.F.R. §§ 404.1529(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").  Similarly, the ALJ properly considered Phillips' drug use in determining whether she met the Listing for substance addiction disorders.  (R. 25).  Because, the ALJ's consideration of evidence relating to Phillips' drug use was consistent with the requirements of the regulations, it does not show any antagonism or bias against Phillips that would prevent the ALJ from making a fair judgment on her claim.

In short, Phillips has not demonstrated that the ALJ formed an opinion on the merits based on an extrajudicial source.  Therefore, the ALJ properly relied on facts she was aware of because of her participation in Phillips' case.  *See Grinnell* 384 U.S. at 583.  Likewise, the ALJ's consideration of Phillips' drug use does not

15

show the "high degree" of antagonism that would "make fair judgment impossible." *See Liteky*, 510 U.S. at 555.  Thus, Phillips' argument is unavailing.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Collier is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**DONE** this 28th day of May, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

16